IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER CONWAY,                  :        Civil No. 3:24-cv-427
                                     :
            Plaintiff                :        (Judge Mariani)
                                     :
       v.                            :
                                     :
SUPERINTENDENT RIVELLO, *et al.*,    :
                                     :
            Defendants               :

## MEMORANDUM

Plaintiff Christopher Conway ("Conway"), an inmate housed, at all relevant times, at

the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"),

commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  The

matter is proceeding via an amended complaint.  (Doc. 12).  Named as Defendants are

Superintendent Rivello, Captain Wendle, Correctional Officer Wakefield, Correctional Officer

Wennick, Correctional Officer Renninger[2], and Correctional Officer Stoltzfus.

---

[1]     Conway is currently housed at the State Correctional Institution, Forest, Pennsylvania ("SCI-Forest").  (*See* Docs. 1, 12).

[2]     Conway spells this Defendant's name as "Renderger."  In their filings, however, Defendants identify this individual as "Renninger."  (*See* Doc. 17).  The Court will adopt Defendants' spelling as correct.

Presently pending before the Court is Defendants' motion to partially dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  (Doc. 14).  For the reasons set forth below, the motion will be granted in part and denied in part.

I.    **Allegations of the Amended Complaint**

On June 16, 2023, while housed at SCI-Huntingdon, Conway alleges that Defendants Wakefield and Renninger placed him in cell G-D-1002.  (Doc. 12 ¶ 1).  While Defendants Wakefield and Renninger were escorting Conway to the cell, they allegedly told him that another inmate recently smeared feces around the cell, and that inmates often smeared feces in that cell.  (Id. ¶ 2).  Conway refers to the cell as a "grind-up cell."  (Id.). Conway claims that Defendants Wakefield and Renninger told him that Defendants Rivello and Wendle approved the use of the cell for inmates who file grievances and that the cell was on a tier where the correctional officer he had filed grievances against worked.  (Id.).

When Conway was placed in the cell, he allegedly asked Defendants Winnick and Renninger, and other staff members, to remove him from the cell and he made gestures to the cell camera.  (Id. ¶ 3).  He avers that he was forced to eat in the cell and told Defendants Winnick and Renninger that he was suicidal.  (Id. ¶ 4).  Conway further avers that despite his suicide threat, Defendants Winnick and Renninger laughed and ignored

---

[3]    Defendants assert that if their motion is granted, this action shall only proceed on the Eighth Amendment deliberate indifference to serious medical needs claim.  (See Doc. 14-1).

2

him. (*Id.*). Conway states that he subsequently fashioned a noose and hung himself. (*Id.* ¶ 5). As a result, he allegedly suffered a heart attack and had to be hospitalized. (*Id.*).

Conway claims that Defendants Wakefield, Winnick, Rivello, Wendle, and Renninger conspired to retaliate against him by placing him in the cell, ignoring his requests to be moved, and ignoring his suicide threat. (*Id.* ¶ 6). Conway maintains that "[a]t no point was [he] to be place[d] in a cell with fecal matter[,]" but, rather, "was supposed to be kept in the strip cage until a bio hazard worker trained in cleaning body fluids cleaned said cell." (*Id.* ¶ 7). Because of his placement in the cell, Conway alleges that he was "put…in a paranoid schizophrenic mind state, [which] cause[d] [him] to attempt suicide." (*Id.*).

Conway also alleges that he was retaliated against for a grievance he filed against Defendant Stoltzfus. (*Id.* ¶ 8). Conway asserts that Defendant Stoltzfus kicked an object on the second tier of the prison on or about November 27, 2022[4], causing it to strike Conway's right leg. (*Id.*). Conway states that he reported the resulting injury to a correctional officer but was never treated. (*Id.*).

Conway seeks damages, court costs, reimbursement for postage and copies, and he requests that Defendants be terminated from their employment. (*Id.* at p. 4).

---

[4]    The amended complaint alleges that this incident occurred on September 27, 2022, (Doc. 12 ¶ 9); however, Conway's grievance and grievance appeals identify the date of the incident as November 27, 2022, (Doc. 23-2). The grievance itself is dated November 28, 2022. (Doc. 23-2). The Court assumes that November 27, 2022 is the correct date of the incident.

## II.    Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not

4

> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.    *Discussion*

### A.    First Amendment Retaliation Claim

The First Amendment offers protection for a wide variety of expressive activities.  *See* U.S. CONST. amend I.  To state a retaliation claim, a plaintiff must plausibly plead that (1) he engaged in protected activity; (2) officials took an adverse action against the plaintiff;

and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson v. Davilla*, 125 F.3d 148, 161 (3d Cir. 1997).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Retaliatory motive can be inferred from either: "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W.*, 480 F.3d at 267. "These are not the exclusive ways to show causation, as the proffered evidence, looked at

6

as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d

271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177

(3d Cir. 1997)).  A plaintiff asserting retaliation "will have to show...that the decision maker

had knowledge of the protected activity[.]" *Moore v. City of Philadelphia*, 461 F.3d 331, 351

(3d Cir. 2006) (citation omitted).

Conway alleges that Defendants[5] retaliated against him by placing him in cell G-D-

1002 for filing a grievance against Defendant Stoltzfus.  (Doc. 12, pp. 4-6).

Defendants contend that Conway has not plausibly alleged causation with respect to

his retaliation claim against Rivello, Wendle, Wakefield, Winnick, and Renninger.  (Doc. 17,

pp. 6-9).  They maintain that, while Conway filed a grievance against Stoltzfus in November

2022, this fact does not plausibly allege causation for Conway's retaliation claim against

Rivello, Wendle, Wakefield, Winnick, and Renninger.

The Court agrees.  It is well-settled that causation cannot be inferred simply by

asserting that a plaintiff pursued some protected activity (such as a prison grievance)

against a Defendant who is not the alleged perpetrator of the retaliatory adverse action.

*See, e.g., Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6,

2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9

(M.D. Pa. July 12, 2021); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D.

---

[5]     Although not entirely clear, the amended complaint appears to lodge a retaliation claim against
Defendants Rivello, Wendle, Wakefield, Winnick, and Renninger.  (Doc. 12 ¶ 6).

Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa.

Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to

retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original));

*Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008)

(concluding that plaintiff failed to satisfy the causal connection for his retaliation claim

against defendant because previous grievance did not name or impact that defendant), *aff'd*

308 F. App'x 576 (3d Cir. 2009) (nonprecedential).  Such general allegations fail to establish

or even infer knowledge of the protected conduct and they likewise fail to show why a

defendant would take the alleged adverse action.  Conway's amended complaint lacks any

causal connection between his protected conduct and Defendants Rivello, Wendle,

Wakefield, Winnick, and Renninger.

Moreover, in his brief in opposition to Defendants' motion to dismiss, Conway

clarifies that "since [he]…engaged in protective activity[,] officer Stoltzfus subjected [him] to

ongoing retaliation due to Plaintiff utilizing the grievance system." (Doc. 23, p. 1; *see also*

Doc. 23-1, p. 1).  He appears to contend that he has plausibly alleged a pattern of

antagonism that demonstrates causation with respect to Stoltzfus. (*Id.*).  The only

antagonistic incidents in Conway's amended complaint that predate the alleged retaliation

involve Defendant Stoltzfus. (Doc. 12 ¶¶ 6, 8).  Thus, without plausibly pleading causation,

Conway's retaliation claims against Defendants Rivello, Wendle, Wakefield, Winnick, and

Renninger are fatally deficient and must be dismissed.  However, in the event that Conway

seeks to pursue a retaliation claim against Stoltzfus, the Court will grant him leave to amend this claim.

      B.    Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and "(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020) (nonprecedential). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (nonprecedential) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

Conway alleges that Defendants Wakefield and Renninger placed him in a cell "that a prisoner had recently smeared fecal matter all over the cell, [and] that this is a cell where this conduct occurs frequently." (Doc. 12 ¶ 2). Defendants argue that this claim must be dismissed because Conway does not allege that he suffered harm as a result of this

condition and because courts have found that exposure to similar conditions for longer periods of time does not violate the Eighth Amendment. (Doc. 17, pp. 9-12).

Conway complains that there was feces on the wall in his cell. (Doc. 12 ¶ 2; Doc. 23-3). Courts have held that an inmate's exposure to urine or feces in a cell does not constitute a substantial risk of serious harm. *See Gilblom v. Gillipsie*, 435 F. App'x 165, 169 (3d Cir. 2011) (nonprecedential) (denying conditions of confinement claim when inmate spent approximately thirty-six hours in a cell with his own excrement). Although "likely unpleasant and…unsanitary," such conditions do not rise to the level of an Eighth Amendment violation. *Thomas*, 948 F.3d at 139. Moreover, the duration of the conditions "cannot be ignored in deciding whether such confinement meets constitutional standards." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhius v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). The amended complaint suggests that Conway was subjected to these conditions for a short duration of time—for less than one hour on June 16, 2023. (Doc. 12 ¶ 1; Doc. 23-3, pp. 2, 5). Exposure to unsanitary cell conditions for even longer durations of time have been found not to present a substantial risk of serious harm. *See, e.g.*, *Gilblom*, 435 F. App'x at 169; *Edge v. Mahlman*, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021), *report and recommendation adopted*, 2022 WL 20113138 (S.D. Ohio Mar. 18, 2022) ("It is well-established that the presence of some unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume

of matter and duration of exposure are extreme."); *Barney v. Pulsipher*, 143 F.3d 1299,

1311-12 (10th Cir. 1998) (noting that an eleven-day stay in unsanitary cell did not constitute

Eighth Amendment violation because duration was relatively brief); *White v. Nix*, 7 F.3d 120,

121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of

relative brevity of stay and availability of cleaning supplies).

The Court next considers whether Conway has pled that he suffered any harm

because of the feces in his cell.  Conway alleges that his placement in the cell "put [him] in a

paranoid schizophrenic mind state, and cause[d] [him] to attempt suicide."  (Doc. 12 ¶ 7).

Conway created a noose, hung himself, suffered a heart attack, and was hospitalized.  (*Id.* ¶

5).  Based on the pleadings, the Court finds that Conway has alleged an excessive risk to

his health or safety.  *See, e.g.*, *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per

curiam*) (concluding that whether plaintiff suffered harm was critical to determination

whether unsanitary conditions were unconstitutional).  The Court, therefore, will deny

Defendants' motion to dismiss with respect to Conway's Eighth Amendment claim

concerning the conditions of his cell.

C.    Conspiracy Claim against Wakefield, Winnick, Rivello, Wendle, & Renninger

To demonstrate the existence of a conspiracy under Section 1983, a plaintiff must

allege that two or more conspirators reached an agreement to deprive him of a

constitutional right under color of law.  *See Parkway Garage, Inc. v. City of Phila.*, 5 F.3d

685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc.*

*v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Twombly*, 550 U.S. at 557. A plaintiff must allege "facts that plausibly suggest a meeting of the minds" with specific facts addressing "the approximate time when the agreement was made, the specific parties to the agreement…, the period of the conspiracy, [and] the object of the conspiracy." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178-79 (3d Cir. 2010); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (holding conspiracy claims based on plaintiff's subjective suspicions and unsupported speculation were properly dismissed at screening).

Conway's amended complaint fails to meet the pleading standards for a civil conspiracy claim. The conspiracy claim set forth in the amended complaint is speculative and conclusory. (Doc. 12 ¶ 6). Conway alleges that he "was placed in this cell as a conspiracy to retaliate for plaintiff filing grievances." (*Id.*). In the absence of other well-pleaded factual assertions, Conway's conspiracy claim amounts to little more than labels and conclusions, and a formulaic recitation of the elements of a cause of action, and, as such, fails as a matter of law. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). Therefore, Conway's conspiracy claim, which is pled in a conclusory fashion without supporting factual detail, fails to state a claim upon which relief may be granted. The Court will dismiss the Section 1983 civil conspiracy claim against Wakefield, Winnick, Rivello, Wendle, and Renninger without prejudice and with leave to amend.

D.    Claim for Injunctive Relief

The case or controversy requirement of Article III, § 2 of the United States Constitution subsists through all stages of federal judicial proceedings.  Parties must continue to have a "personal stake in the outcome of the lawsuit."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

In other words, throughout the course of the action, the aggrieved party must suffer or be threatened with actual injury caused by the defendant.  *Lewis*, 494 U.S. at 477. Further, the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy."  *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  An "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation.  *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (internal quotation marks omitted); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'" (quoting *Preiser*, 422 U.S. at 401)).

A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Murphy v. Hunt*, 455 U.S. 478, 481, (1982) (*per curiam*) (some internal quotation marks omitted).  No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs'

particular legal rights." *Alvarez*, 558 U.S. at 93. A prisoner's transfer from the prison

complained of generally moots his claims for prospective injunctive relief. *Sutton v.*

*Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("[A] federal court has neither the power to

render advisory opinions nor to decide questions that cannot affect the rights of litigants in

the case before them.") (quoting *Preiser*, 422 U.S. at 401); *Abdul-Akbar v. Watson*, 4 F.3d

195, 206 (3d Cir. 1993).

Conway's request for injunctive relief is specific to individuals employed at SCI-

Huntingdon. (Doc. 12, p. 4). This is problematic as Conway is no longer housed at that

institution. He has been transferred to SCI-Forest. In this instance, Conway's transfer to a

different facility renders his request for injunctive relief moot. Therefore, the claim for

injunctive relief will be dismissed.

    E.   <u>Official Capacity Claims</u>

Lastly, Defendants argue that the claims against them in their official capacities must

be dismissed. (Doc. 17, pp. 15-16). Personal capacity suits under section 1983 seek to

recover money from a government official, as an individual, for acts performed under color

of state law. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity suits, in

contrast, generally represent an action against an entity of which the government official is

an agent. *Id.*; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978).

When suits are brought against state officials in their official capacities, those lawsuits are

treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the

doctrine of sovereign immunity, established by the Eleventh Amendment, protects states,

such as the Commonwealth of Pennsylvania, from suits by citizens. *Pennhurst State*

*School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*,

517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). That

immunity runs to state officials if they are sued in their official capacity and the state is the

real party upon which liability is sought. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).

Congress has not abrogated the immunity regarding Conway's claims, nor has

Pennsylvania waived this grant of immunity. *See* 42 Pa. C.S.A. § 8521(b). Thus, Conway's

section 1983 claim against the Defendants in their official capacities is barred by sovereign

immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). The

official capacity claims will be dismissed.

## IV.    *Leave to Amend*

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules

allow for liberal amendments in light of the "principle that the purpose of pleading is to

facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

The Court finds that the following claims are factually and legally flawed: the retaliation claim against Rivello, Wendle, Wakefield, Winnick, and Renninger, the claim for injunctive relief and the official capacity claims. Thus, the Court finds that granting leave to amend these claims would be both futile and inequitable.

However, the Court finds that the pleading deficiencies of the retaliation claim against Stoltzfus, and the conspiracy claim against Wakefield, Winnick, Rivello, Wendle, and Renninger are largely factual in nature and thus conceivably could be cured by an amended pleading. Therefore, the Court will grant Conway leave to amend the retaliation claim against Stoltzfus and his conspiracy claim against Wakefield, Winnick, Rivello, Wendle, and Renninger.

## V.    Conclusion

For the reasons set forth above, Defendants' motion (Doc. 14) to partially dismiss the amended complaint will be granted in part and denied in part. The Court will grant Defendants' motion to dismiss the retaliation claim against Rivello, Wendle, Wakefield, Winnick, and Renninger, the claim for injunctive relief, and the official capacity claims with prejudice. The Court will grant Defendants' motion to dismiss the retaliation claim against Stoltzfus and the conspiracy claim against Wakefield, Winnick, Rivello, Wendle, and Renninger without prejudice and with leave to amend.

The Court will deny Defendants' motion to dismiss the conditions of confinement claim.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 27, 2025